American Trucking Associations, Inc., and Old Dominion Freight Line, Inc., and Anderson Trucking Service, Inc., individually and on behalf of a class of interstate motor carriers, Petitioners *v.* Robert K. Bloom, Secretary of the Department of Revenue of the Commonwealth of Pennsylvania, and LeRoy S. Zimmerman, Attorney General of the Commonwealth of Pennsylvania, and Daniel F. Dunn, Commissioner of the State Police of the Commonwealth of Pennsylvania, Respondents.

Heard on September 19, 1983, by Judge WILIAMS, JR.

*Thomas A. Schneider,* with him *Arthur R. Littleton* and *Frank J. Napolitano, Jr., Morgan, Lewis & Bockius,* for petitioners.

*LeRoy S. Zimmerman,* Attorney General, with him *Maura A. Johnson.* Deputy Attorney General, *Robert B. Hoffman,* Deputy Attorney General, and *Allen C. Warshaw,* Deputy Attorney General, Chief of Special Litigation Section, for respondents.

MEMORANDUM OPINION BY JUDGE WILLIAMS, JR., October 17, 1983:

Petitioner, American Trucking Associations, Inc. and two foreign-based motor carriers,[1] challenge, in this original action, the constitutionality of Section 2102(b) of the Vehicle Code, 75 Pa. C. S. §2102(b), which required for years beginning the first of April 1981 and 1982, that motor carrier vehicles (vehicles)[2] operating in Pennsylvania each bear an identification marker issued by Respondent Secretary of Revenue upon payment of $25.00. Petitioners further seek the refunding of all marker decal fees paid by class members for the year beginning April 1, 1982, in accordance with the Stipulation of the parties dated February 25, 1982.

On June 18, 1980, Title 75 of the Vehicle Code was amended by Section 4 of the Act 1980-68 which added, *inter alia,* the requirement that an identification marker be affixed to every motor carrier vehicle subject to the provisions of the Motor Carriers Road Tax Act (Act).[3] Although the amendments mandate that

---

[1] By order of Judge MACPHAIL, dated May 18, 1982, Petitioners were certified as representative parties to a class action. Petitioners' class was defined as "all interstate carriers whose motor carrier vehicles are registered outside of Pennsylvania and are subject to the road tax identification marker requirement of Section 2102 of the Vehicle Code and who now or may in the future become liable for payment of the yearly marker fee of $25.00 on account of such motor carrier vehicles."

Petitioners were also certified to represent a subclass of affected "interstate carriers whose motor carrier vehicles are registered in any of the states or provinces with which Pennsylvania has entered into bilateral apportioned registration reciprocity agreements."

[2] A "motor carrier vehicle" is defined as "[a] truck, truck tractor or combination having a gross weight or registered gross weight in excess of 17,000 pounds." Section 102 of the Vehicle Code, *as amended,* 75 Pa. C. S. §102.

[3] Act of June 19, 1964, P.L. 7, *as amended,* 72 P.S. §§2617.1-2617.26. The Motor Carriers Road Tax is a levy on certain liquid

a marker decal be provided "for every motor carrier vehicle," only foreign-registered vehicles are required to bear the marker decals since Pennsylvania-registered vehicles provide the Commonwealth notice that they are subject to the Act through their registration. Respondents' *Memorandum of Law* at 3 n.6. Operation of a motor carrier vehicle, without an identification marker, in the Comonwealth, is unlawful. Section 2102(d) of the Vehicle Code, 75 Pa. C. S. §2102(d).

Before Section 1 of the Act of December 8, 1982, P.L. 842, No. 234 amended Section 2102(b) of the Vehicle Code lowering the marker decal fee to $5.00 effective April 1, 1983,[4] Section 2102(b) provided:

> (b) Fee.—The fee for issuance of an identification marker shall be $25, except that for vehicles registered in this Commonwealth, the vehicle identification marker fee shall be deemed a part of and included in the vehicle registration fee.

The marker decal levy is a tax imposed for the privilege of using Pennsylvania roads. One-fifth of the tax pays the administrative costs of issuing a decal, the remainder is expended for highway maintenance and construction. Unlike the owners of foreign-registered vehicles who actually paid the $25.00 marker decal fee for 1981 and 1982 (payments totaled approximately ten million dollars in 1981), owners of

---

fuels, including gasoline and diesel fuel, calculated on the amount of fuel purchased outside of Pennsylvania but consumed on Commonwealth roads. Fuel purchased in Pennsylvania but consumed elsewhere is excluded. The tax rate is eleven (11) cents per gallon plus three point five percent (3.5%) of the average wholesale price of the purchased fuel.

[4] Petitioners do not challenge the constitutionality of Section 2102(b), *as amended,* which imposes a $5.00 marker fee, because the amount equals the stipulated cost of administering the marker decal system.

Pennsylvania-registered vehicles had the marker decal fee "deemed a part of and included in [their] registration fee[s]."

Petitioners assert that the Legislature by "deeming" the marker decal fee to be part of and included in the Pennsylvania vehicle registration fee, intended to impose the full tax burden on Petitioners and their class, and therefore exempt the owners of Pennsylvania-registered vehicles from paying the tax. Section 2101(b), Petitioners contend, is therefore unconstitutional under the Commerce Clause of the United States Constitution, Art. 1, §8, and the Privileges and Immunities Clause, Art. IV, §2, in that the provision facially discriminates against foreign-registered vehicles, and in favor of Pennsylvania-registered vehicles, by exempting the latter from any financial burden under the marker decal fees system. Respondents assert that since Act 1980-68 introduced the $25.00 marker decal fee *and* increased registration fees for the different weight classes of motor carrier vehicles by varying amounts, each of which exceeded the $25.00 marker fee amount, Section 2102(b) passes constitutional muster. The contemporaneous legislative history of Act 1980-68 and Respondents consistent interpretation of the marker decal fee requirement as raising revenue solely from foreign-registered vehicles, however, belies this contention.

A review of the contemporaneous legislative history[5] of Act 1980-68 reveals that the Legislature did not increase registration fees so as to reflect the addition of the marker decal fee requirement. While Act 1980-68 increased motor carrier vehicle registra-

---

[5] Section 1921(c)(7) of the Statutory Construction Act, 1 Pa. C. S. §1921(c)(7), permits resort to the contemporaneous legislative history of an act when, as here, the words of a statute are not explicit.

tion fees by amounts ranging from $45.00 to $228.00, those increases were not intended to include the $25.00 marker decal fee.

Senate Bill No. 10 (Printer's No. 965), the precursor of Act 1980-68, when first reported from the Transportation Committee on June 25, 1979, significantly raised registration fees without including a marker decal fee provision. When the $25.00 marker decal fee requirement was first introduced in Senate Bill No. 10 (Printer's No. 1834), as reported from Conference Committee on May 27, 1980, not only were the registration fees not increased to reflect the added marker decal fee requirement, but the registration fees for vehicles of two weight classes were actually decreased.[6] The Legislature, therefore, did not increase registration fees so as to require owners of Pennsylvania-registered vehicles to actually pay the marker decal fee.

Further, the Respondents have consistently interpreted Section 2102(b) as raising revenue *exclusively* from out-of-state carriers. By stipulation, marker decal fee revenues for the year beginning April 1, 1981, equalled $10,553,654.00. (Stipulation of Fact No. 70.) This amount is roughly equivalent to the sum total of marker decal expenditures by Petitioners and their class for that period.

It is apparent from the contemporaneous legislative history that the Legislature intended to *exclusively* tax foreign-registered vehicles, and from the Stipulation of Facts that the Commonwealth has treated the marker decal tax receipts as coming *solely* from out-of-state carriers. Section 2102(b), therefore,

---

[6] The registration fees for vehicles weighing between 21,001-26,000 pounds and 68,001-73,280 pounds were decreased by $2.00 and $41.00 respectively. (*Compare* Senate Bill No. 10, Printer's Nos. 1834 and 1952.)

facially discriminates in favor of local interests and against foreign-registered vehicles engaging in interstate commerce.

A state tax on interstate commerce does not offend the Commerce Clause of the United States Constitution, Art. 1, §8, if that tax [1] is applied to an activity with a substantial nexus with the taxing state, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274 (1977). Section 2102(b) facially fails the third prong of the *Complete Auto* standard which prohibits discrimination against interstate commerce. Notwithstanding legislative legerdemain in the insertion of the obfuscating term "deemed," Pennsylvania-registered vehicles were *exempted* from, and foreign-registered vehicles were *subject* to, the marker decal fee. "The commerce clause forbids discrimination, whether forthright or ingenious." *Best & Co. v. Maxwell,* 311 U.S. 454, 455 (1940) (footnote omitted).

Since Section 2102(b) facially discriminates against foreign-registered vehicles and in favor of Pennsylvania-registered vehicles in violation of the Commerce Clause of the United States Constitution, Petitioners' additional arguments need not be addressed.

ORDER

AND Now, this 17th day of October, 1983, it is hereby declared that the $25.00 identification marker fee imposed upon interstate motor carrier vehicles pursuant to Section 2102(b) of the Vehicle Code, 75 Pa. C. S. §2101(b), violates the Commerce Clause to the United States Constitution.

Refunds of payments for identification markers for the year beginning April 1, 1982, shall proceed

in accordance with the Stipulation of the parties dated February 25, 1982.