American Trucking Associations, Inc. et al., Petitioners *v.* Robert K. Bloom, Secretary of the Department of Revenue of the Commonwealth of Pennsylvania et al., Respondents.

Argued December 11, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

346

*Arthur R. Littleton*, with him, *Mark P. Pazuhanich* and *Frank J. Napolitano, Jr.*, of counsel, *Morgan, Lewis & Bockius*, for petitioners.

*Maura A. Johnston*, Deputy Attorney General, with her, *Francis X. O'Brien, Jr.*, and *Robert B. Hoffman*, Deputy Attorneys General, *Allen C. Warshaw*, Deputy Attorney General, Chief, Litigation Section, and *Le-Roy S. Zimmerman*, Attorney General, for respondents.

OPINION BY JUDGE WILLIAMS, JR., February 5, 1985:
Before this Court are respondents[1] exceptions to Judge ROBERT W. WILLIAMS, JR.'s Memorandum Opinion and Order of October 17, 1983. We dismiss the exceptions and affirm the order.

American Trucking Associations, Inc. and two foreign-based interstate motor carriers (petitioners) brought an original, class action challenging the con-

---

[1] Respondents include the Commonwealth's Secretary of the Department of Revenue, Attorney General and State Police Commissioner.

stitutionality and seeking to enjoin enforcement of the identification marker fee requirement of Section 2102 (b) of the Vehicle Code, 75 Pa. C. S. §2102(b).[2] Petitioners further demand the refunding of all marker fees paid by class members for the year beginning April 1, 1982.

On June 18, 1980, Title 75 of the Vehicle Code was amended by Section 4 of the Act of June 18, 1980, P.L. 229, No. 68 (Act 68), which required that an identification marker, obtainable from the Department of Revenue for $25.00, be affixed to every motor carrier vehicle[3] operating in Pennsylvania. Vehicles bearing identification markers are subject to the record-keeping, reporting and tax-paying requirements of the Motor Carriers Road Tax Act (Road Tax).[4] Operators of Pennsylvania-registered motor carrier vehicles provide notice that they are subject to the Road Tax through registration and are not required to display markers. Respondents' *Brief in Support of Excep-*

---

[2] Petitioners represent a class that is certified as consisting of all interstate motor carriers operating foreign-registered vehicles, which are subject to the identification marker requirement of Section 2102(b).

Petitioners also represent a sub-class that is certified as consisting of all interstate motor carriers operating vehicles registered in states or provinces with which Pennsylvania has entered into bilateral apportioned registration reciprocity agreements, which are subject to the identification marker requirement of Section 2102(b).

[3] A "motor carrier vehicle" is defined as "[a] truck, truck tractor or combination having a gross weight or registered gross weight in excess of 17,000 pounds." Section 102 of the Vehicle Code, 75 Pa. C. S. §102.

[4] Act of June 19, 1964, P.L. 7, *as amended*, 72 P.S. §§2617.1-2617.26. The Road Tax is assessed against certain liquid fuels, including gasoline and diesel fuel, calculated on the amount of fuel purchased outside of, but consumed inside, Pennsylvania. Fuel purchased in Pennsylvania but consumed elsewhere is excluded. The tax rate is eleven (11) cents per gallon plus three point five percent (3.5%) of the average wholesale price of the purchased fuel.

348

*tions* at 6, n.12. Operating a motor carrier vehicle in the Commonwealth without an identification marker is unlawful. Section 2102(d) of the Vehicle Code, 75 Pa. C. S. §2102(d).

Before Section 1 of the Act of December 8, 1982, P.L. 842, No. 234 (Act 234) amended Section 2102(b) and reduced the marker fee to $5.00 (effective April 1, 1983), Section 2102(b) provided:

> (b) Fee.—The fee for issuance of an identification marker shall be $25, except that for vehicles registered in this Commonwealth, the vehicle identification marker fee shall be deemed a part of and included in the vehicle registration fee.

The marker fee is a tax for the privilege of using Pennsylvania's roads. One-fifth of the tax pays the administrative costs of issuing identification markers,[5] and the balance is credited to the Motor License Fund for highway construction and maintenance, the state police and construction bond debt service. *See* J.S.F. No. 46. While operators of foreign-registered vehicles actually paid the $25.00 marker fees for 1981 and 1982 (payments which totaled approximately ten million dollars in 1981), Pennsylvania-registered motor carriers had the marker fee "deemed a part of and included in [their] vehicle registration fee[s]."

At trial petitioners asserted that the Legislature, by cleverly "deeming" the marker fee to be part of and included in the Pennsylvania registration fee, intended to—and did—impose the full tax burden on foreign-registered motor carriers while exempting Pennsylvania-registered motor carriers. Petitioners

---

[5] Petitioners do not challenge the constitutionality of Section 2102(b), *as amended* by Act 234, because the $5.00 marker fees equal the stipulated costs of administering the identification marker program. *See* Joint Stipulation of Facts (J.S.F.) No. 6.

challenged the marker fee as repugnant to the United States Constitution's Commerce Clause, art. I, §8, cl.3; Privileges and Immunities Clause, art. IV, §2; Equal Protection Clause, amend. XIV; and the Uniformity Clause of the Pennsylvania Constitution, art. VIII, §1.

Although the parties entered into an extensive factual stipulation, a trial was held regarding the validity of petitioners' survey, which purported to establish the marker fee's discriminatory impact on foreign-registered motor carriers. The Commonwealth also presented evidence relevant to truck-induced road deterioration and costs. The trial judge, after reviewing the stipulation and contemporaneous legislative history of the marker fee provision, concluded that Section 2102(b) offended the Commerce Clause by facially discriminating against foreign-registered motor carriers which, given the exemption ingeniously accorded Pennsylvania-registered motor carriers, exclusively bore the financial burden. *American Trucking Associations, Inc. v. Bloom*, 77 Pa. Commonwealth Ct. 575, 466 A.2d 755 (1983).

Respondents filed exceptions to the trial judge's decision, arguing (among other things) that Section 2102(b) passes constitutional muster because Act 68, which created the $25.00 marker fee, also increased registration fees for Pennsylvania-based motor carrier vehicles from $45.00 to $228.00, depending on the weight classification. *See* Section 2 of Act 68 *amending* Section 1916(a) of the Vehicle Code, 75 Pa. C. S. §1916(a).

Notwithstanding the vague "deemed"[6] language of Section 2102(b), the issue is whether the Legislature

---

[6] The verb "to deem" is defined pertinently as "to come to view, judge or classify: [h]old, [t]hink." Webster's Third New International Dictionary 589 (1966).

intended to, and actually did, incorporate the $25.00 marker fee when it increased Pennsylvania-based motor carrier vehicle registration fees under Act 68.

Our review of Act 68's contemporaneous legislative history[7] reveals a sequence of events that evince a legislative intent to exempt Pennsylvania-registered vehicles from the marker fee levy. While Act 68 increased motor carrier vehicle registration fees by amounts ranging from $45.00 to $228.00, these increments do not, and were not intended to, include the later-introduced $25.00 marker fee.

Act 68's precursor, Senate Bill No. 10 (Printer's No. 965), significantly raised motor carrier vehicle registration fees, without including a marker fee provision, when first reported from Transportation Committee on June 25, 1979. On July 10, 1979, a $5.00 identification marker decal provision was added to Senate Bill No. 10 (Printer's No. 1038). When the $25.00 marker fee was subsequently introduced in Senate Bill No. 10 (Printer's No. 1834), which was reported from Conference Committee on May 27, 1980, the motor carrier vehicle registration fees were never increased to reflect the newly added privilege tax. Moreover, the registration cost for vehicles weighing between 68,001 to 73,280 pounds was reduced by $41.00. Since the Legislature never increased registration fees in response to the subsequent $25.00 marker levy, we divine a legislative intent to exempt Pennsylvania-registered motor carriers from payment of the $25.00 marker fee.

Local taxation of interstate commerce does not violate the Commerce Clause when the levy (1) is applied to an activity with a substantial nexus to the taxing

---

[7] Section 1921(c)(7) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(c)(7), permits consideration of an act's contemporaneous legislative history when, as here, statutory language is not explicit.

state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce and (4) is fairly related to local services. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977). A state tax's validity under the Commerce Clause must be measured by the statute's actual effect on interstate commerce in the context of the state's entire, interrelated taxing scheme. *Maryland v. Louisiana*, 451 U.S. 725, 756 (1981) (Louisiana's "first-use" tax on natural gas invalidated because local users benefited by a series of exemptions and credits).

Section 2102(b) facially offends the third prong of the *Complete Auto* standard, which proscribes discrimination against interstate commerce. Notwithstanding the Legislature's clever insertion of the "deemed" language, our review of the contemporaneous legislative history of Section 2102(b) persuades us that the Legislature intended to, and actually did, exclude Pennsylvania-registered motor carriers from the financial impact of the marker levy. "The commerce clause forbids discrimination, whether forthright or ingenious." *Best & Co. v. Maxwell*, 311 U.S. 454, 455 (footnote omitted).

Since Section 2102(b) facially discriminates against foreign-registered motor carrier vehicle operators and in favor of Pennsylvania-registered motor carrier vehicle operators in violation of the Commerce Clause, the additional exceptions need not be addressed.

Accordingly, respondents' exceptions are overruled.

## Order

And Now, this 5th day of February, 1985, Respondents' exceptions to the Opinion and Order of Judge Robert W. Williams, Jr., dated October 17, 1983, are overruled.

President Judge CRUMLISH, JR. and Judge BARRY dissent.